UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

STEVEN WINCH,

        Plaintiff,

v.                                                       Case No. 3:22-cv-215-BJD-JBT

CENTURION OF FLORIDA, LLC,
et al.,

        Defendants.
_____

**ORDER**

**I. Status**

Plaintiff, Steven Winch, a state inmate, is proceeding on a third amended complaint (Doc. 9; Am. Compl.) against five Defendants: Centurion of Florida, LLC, a medical company under contract with the Florida Department of Corrections to provide healthcare for inmates; Dr. Jackie Westfall, Medical Director; Dr. Max Solano, Medical Director; Loretta Dawson, Advanced Registered Nurse Practitioner; and Dr. Anand S. Gupta, Surgeon. *See* Am. Compl. at 2-3, 13. Plaintiff asserts claims for deliberate indifference under 42 U.S.C. § 1983 and medical malpractice/negligence under state law related to treatment he received for an unspecified skin condition between December 2020 and early 2022. *Id.* at 14, 16, 21, 23-32. Plaintiff's specific claims are as

follows: deliberate indifference in violation of the Eighth Amendment against Defendants Centurion (Counts I, II, IV, V, VII, and VIII), Dr. Westfall (Count III), Nurse Dawson (Count VI), and Dr. Gupta (Count IX); and medical negligence or malpractice in violation of Florida Statutes sections 456.47, 458.348(1)(a), 464.012(3),(4), or 766.102 or the Florida Administrative Code against Defendants Dr. Westfall (Count X), Dr. Solano (Count XI), Nurse Dawson (Counts XII and XIII), Centurion (Count XIV), and Dr. Gupta (Count XV).

Centurion and its employees, Dr. Westfall, Nurse Dawson, and Dr. Gupta (collectively, "Centurion Defendants"), move to dismiss the claims against them for Plaintiff's failure to state a plausible claim for relief (Doc. 25; Centurion Mot.). Dr. Solano separately moves to dismiss the sole claim asserted against him (medical malpractice under Florida law) for Plaintiff's failure to comply with presuit requirements under Chapter 766 of the Florida Statutes (Doc. 26). Plaintiff has responded to both motions in one response (Doc. 37; Pl. Resp.).

As to the state-law claims against Defendants Dr. Gupta and Dr. Solano, Plaintiff concedes he "failed to comply with the Florida Medical Malpractice Act" and voluntarily dismisses his medical malpractice claims against these

2

Defendants.[1] *See* Pl. Resp. at 13. He argues, however, that his medical malpractice/negligence claims against Defendants Dr. Westfall, Nurse Dawson, and Centurion may proceed because he "fully complied with the Florida Medical Malpractice Act's pre-suit requirements, or they were otherwise waived." *Id.* at 8. Except as to the medical malpractice claim against Defendant Dr. Gupta, Plaintiff opposes the Centurion Defendants' motion. *See generally id.*

## II. Motion to Dismiss Standard

A defendant may move to dismiss a complaint for a plaintiff's "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). In ruling on such a motion, the court must accept the plaintiff's allegations as true, liberally construing those by a plaintiff proceeding *pro se*, but need not accept as true legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Though detailed factual allegations are not required, Rule 8(a) demands "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* A

---

[1] Plaintiff asks that the claims be voluntarily dismissed without prejudice. *See* Pl. Resp. at 13. Rule 41 of the Federal Rules of Civil Procedure provides in pertinent part, "[a] plaintiff may dismiss an action without a court order by filing[] . . . a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment." Fed. R. Civ. P. 41(a)(1)(A)(i). Because Defendants have not filed an answer or a motion for summary judgment, Plaintiff is permitted to voluntarily dismiss his claims without prejudice. *See id.*

3

plaintiff should allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting the plaintiff's claims. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

### III. Complaint Allegations

Plaintiff alleges he first treated with Dr. Westfall at Putnam Correctional Institution (PCI) on December 4, 2020, nearly three years after he "began suffering from skin irritation, rash-like bumps, itching, and sores" for which he treated with other providers, including a dermatologist, Dr. Solano. *See* Am. Compl. at 14, 16. Plaintiff explained to Dr. Westfall the history of his skin condition, including that numerous healthcare providers had diagnosed him with scabies and had prescribed various medications that "all proved ineffective/inadequate," including Permetherin Lotion, Ivermectin, Prednisone, Triamcinolone, topical steroids, and antibiotics. *Id.* at 16. Dr. Westfall reviewed Plaintiff's medical records and, according to Plaintiff, "conducted a cursory examination," after which he prescribed Triamcinolone Acetonide Cream—a medication the dermatologist, in June 2020, recommended that Plaintiff "no longer be prescribed" because it was making his skin thin and easily prone to infection. *Id.* at 15-16. Dr. Westfall refused Plaintiff's request to be sent back to a dermatologist. *Id.* at 16.

4

Plaintiff treated with Dr. Westfall again on about January 12, 2021. *Id.* Dr. Westfall conducted a "skin scraping test," which showed "no evidence of organic matter." *Id.* Plaintiff alleges he treated with Dr. Westfall on "several occasions" between February 16, 2021, and March 10, 2021. *Id.* He contends Dr. Westfall "conducted cursory examinations[,] diagnosed [his] condition as either unknown dermatitis or scabies," and prescribed medications that Plaintiff told him had "failed to resolve his condition" or had caused him to develop blisters, sores, and infections in the past, or that the dermatologist recommended he no longer take: Permethrin Lotion, Ivermectin, Prednisone, Triamcinolone, topical steroids, and antibiotics. *Id.* at 16-17. Plaintiff alleges the Permethrin Lotion and Ivermectin caused him to develop blisters, sores, and infections. *Id.* at 17. On March 16, 2021, Dr. Westfall prescribed different medications, Ketoconazole Cream and Fluconazole, which Plaintiff alleges had been prescribed in the past but did not help. *Id.* at 17, 17 n.6.

On March 30, 2021,[2] Dr. Westfall told Plaintiff there was nothing more he could do to treat his "skin disease," and he told Plaintiff he would be referring him to a dermatologist. *Id.* at 17. Plaintiff alleges the consultation was not approved (presumably by Centurion), but he instead had a RubiconMD

---

[2] Plaintiff alleges he received a prescription for antibiotics (Doxycycline) on May 5, 2021, but he does not say who prescribed it. *See* Am. Compl. at 17. He contends he received it "without seeing Dr. Westfall." *Id.*

5

eConsult.³ *Id.* at 17-18. The RubiconMD eConsult recommended Plaintiff try the oral antibiotic he was already taking (Doxycycline), but Plaintiff told Dr. Westfall he tried that medication in the past and it did not help. *Id.* at 18. Plaintiff continued to use the medication as recommended, but his "skin disease remained unresolved." *Id.*⁴

Plaintiff did not treat with Dr. Westfall again until February 2022, apparently because Dr. Westfall had taken a leave of absence. *Id.* at 19, 21. While Dr. Westfall was on leave, Plaintiff treated with Nurse Dawson two times. *Id.* at 19. At his first appointment, on September 17, 2021, Nurse Dawson prescribed Doxycycline, which Plaintiff advised had previously proven ineffective. *Id.* Plaintiff also told Nurse Dawson that he was having trouble sleeping and the medication the dermatologist prescribed about four weeks prior was causing him to have blurred vision, confusion, irritability, and

---

³ Plaintiff says RubiconMD is "an information service that does not provide medical diagnosis or treatment." *See* Am. Compl. at 18 n.8. The RubiconMD website indicates the platform allows primary care physicians to electronically consult with specialists regarding a patient's symptoms and treatment needs. *See* https://www.rubiconmd.com/ (last visited Aug. 7, 2023).

⁴ Plaintiff eventually had a consultation with dermatologist Dr. Solano in August 2021, though he alleges Centurion delayed the appointment by four months and scheduled it as a telehealth consultation. *See* Am. Compl. at 18. Plaintiff alleges Dr. Solano conducted a cursory examination "through a webcam" and did not review medical records or perform diagnostic tests. *Id.* at 18-19. Dr. Solano prescribed two medications (Neurontin and Doxepin), but Centurion approved only one (Doxepin). *Id.* at 19.

agitation, but Nurse Dawson made no changes or adjustments to the medication, noting instead that Plaintiff was scheduled for a follow-up appointment with the dermatologist in February 2022 (about five months in the future). *Id.* at 19-20. At the second appointment with Nurse Dawson, on October 14, 2021, Plaintiff voiced many of the same complaints—difficulty sleeping and unpleasant side-effects from the medication the dermatologist prescribed—but Nurse Dawson refused to change the medication or request that Plaintiff's follow-up occur sooner. *Id.* at 20.

Plaintiff was sent to the Reception and Medical Center (RMC) on February 15, 2022, for what was supposed to have been a follow-up appointment with the dermatologist. *Id.* Instead of treating with a dermatologist, though, he treated with Dr. Gupta, a surgeon.[5] *Id.* Plaintiff alleges Dr. Gupta "conducted a cursory examination," prescribed medications that were ineffective in the past (Claritin and Triamcinolone Acetonide Cream), and scheduled him for a one-month follow-up. *Id.* at 20-21. Plaintiff complains that Dr. Gupta did not review his medical records or refer him to a dermatologist. *Id.* at 21.

---

[5] Plaintiff alleges a nurse at PCI told him no dermatologists were available. *See* Am. Compl. at 21.

On February 25, 2022, Dr. Westfall saw Plaintiff again and prescribed the same (ineffective) medications as did Dr. Gupta. *Id.* On March 4, 2022, Plaintiff presented to Dr. Westfall with "a blistery sore on his lip, and numerous bumps and ring-like swellings inside his mouth." *Id.* Dr. Westfall prescribed an antifungal medication, which Plaintiff alleges had been prescribed twice before (apparently since the onset of his symptoms in 2017) without benefit. *Id.* Plaintiff treated with Dr. Westfall again on the following dates: April 1, 2022; April 19, 2022; and May 23, 2022. *Id.* at 22-23. Dr. Westfall again prescribed medications that had proven ineffective in the past, including antibiotics, and gave Plaintiff Benadryl for the intense itching he was experiencing. *Id.* at 22. Plaintiff alleges Dr. Westfall told him that "[t]here [was] no dermatologist in the State of Florida" who could treat him. *Id.* Plaintiff was sent to RMC again on May 17, 2022. *Id.* at 22-23. Dr. Gupta advised he would submit a request for Plaintiff to be seen by a dermatologist. *Id.* at 23.

Plaintiff alleges that, at the time he filed his operative complaint, his "chronic and unstable serious skin disease [was] still inaccurately diagnosed and inadequately medicated. . . . and . . . causing substantial and irreparable physical injuries and emotional harm to [him]." *Id.*

8

### IV. Analysis

The Centurion Defendants move to dismiss the claims against them on the following grounds: Plaintiff does not allege facts demonstrating Defendants Dr. Westfall, Nurse Dawson, or Dr. Gupta were deliberately indifferent to his serious medical needs; Plaintiff fails to allege facts to proceed against Centurion, such as the adoption of a policy or custom that was the "moving force" behind a constitutional violation; Plaintiff failed to comply with Florida's medical malpractice presuit requirements; Plaintiff fails to state a plausible medical malpractice claim; and Centurion is entitled to sovereign immunity. *See generally* Centurion Mot.

#### A. Deliberate Indifference

A claim for deliberate indifference to a serious illness or injury is cognizable under § 1983. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To state a claim, a plaintiff first must allege he had a serious medical need. *Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004). Next, the plaintiff must "allege that the prison official, at a minimum, acted with a state of mind that constituted deliberate indifference." *Richardson v. Johnson*, 598 F.3d 734, 737 (11th Cir. 2010). Finally, the plaintiff must allege facts showing a causal connection between the defendant's conduct and his resulting injuries. *Mann*

*v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306-07 (11th Cir. 2009), *overruled in part on other grounds by Hope v. Pelzer*, 536 U.S. 730, 739 (2002).

"A core principle of Eighth Amendment jurisprudence in the area of medical care is that prison officials with knowledge of the need for care may not, by failing to provide care . . . or providing grossly inadequate care, cause a prisoner to needlessly suffer the pain resulting from his or her illness." *McElligott v. Foley*, 182 F.3d 1248, 1257 (11th Cir. 1999). However, "[a] prisoner bringing a deliberate-indifference claim has a steep hill to climb." *Keohane v. Fla. Dep't of Corr. Sec'y*, 952 F.3d 1257, 1266 (11th Cir. 2020). To sufficiently plead the second element (deliberate indifference), a plaintiff must do more than allege the care he received was "subpar or different from what [he] want[ed]." *Id.* Rather, "a plaintiff must [allege] that the defendant (1) had subjective knowledge of a risk of serious harm, (2) disregarded that risk, and (3) acted with more than *gross* negligence." *Wade v. McDade*, 67 F.4th 1363, 1374 (11th Cir. 2023) (emphasis in original).

The Eleventh Circuit recently has "been at pains to emphasize" that deliberate indifference is much more stringent a standard than negligence or malpractice: it "is *not* a constitutionalized version of common-law negligence." *Hoffer v. Sec'y, Fla. Dep't of Corr.*, 973 F.3d 1263, 1271 (11th Cir. 2020) (emphasis in original) (quoting *Swain v. Junior*, 961 F.3d 1276, 1287-88 (11th

Cir. 2020)). The Eighth Amendment does not mandate that the medical care prisoners receive be "perfect, the best obtainable, or even very good." *Id.* (quoting *Harris*, 941 F.2d at 1510). As such, allegations that prison medical providers "could be doing more, doing better" do not satisfy the stringent deliberate indifference standard. *Id. See also Estelle*, 429 U.S. at 106, 107 (holding a prisoner failed to state a plausible claim where he alleged merely that more should have been done to diagnose his back injury and treat his pain).

The cases in which the Eleventh Circuit has found the deliberate-indifference standard satisfied "typically involved egregious circumstances, [such as] prison officials denying inmates medication for no reason at all." *Wade*, 67 F.4th at 1376. Even a decision by a medical provider that can be classified as "more than *merely* negligent . . . . does not rise to the level of a constitutional violation." *Id.* at 1375 (emphasis in original) (concluding a nurse's decision to wait for an inmate's already-ordered epilepsy medication to arrive rather than to retrieve some from the supply closet, while "regrettable," was not more than grossly negligent).

When a plaintiff has received some treatment, he pleads a deliberate-indifference claim by alleging facts showing the care he received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to

11

be intolerable to fundamental fairness." *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991) (quoting *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986)). Stated another way, "[d]eliberate indifference is not about 'inadvertence or error in good faith,' but rather about 'obduracy and wantonness'—a deliberate refusal to provide aid despite knowledge of a substantial risk of serious harm." *Stone v. Hendry*, 785 F. App'x 763, 769 (11th Cir. 2019)[6] (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)).

Defendants do not dispute that Plaintiff had a "serious medical need." *See* Centurion Mot. at 7. Rather, they argue Plaintiff alleges a mere disagreement with medical judgments or dissatisfaction with the treatment he received. *Id.* at 7-12.

### B. Claims Against Dr. Westfall, Nurse Dawson, and Dr. Gupta

Accepting as true Plaintiff's allegations, he fails to allege a plausible deliberate indifference claim against Defendants Dr. Westfall, Nurse Dawson, and Dr. Gupta. Notably, Plaintiff's allegations describing the treatment he received for his skin condition comprise 59 paragraphs spanning over nine pages. It appears he unfortunately has a difficult-to-diagnose or difficult-to-

---

[6] Any unpublished decisions cited in this Order are deemed persuasive authority on the relevant point of law. *See McNamara v. GEICO*, 30 F.4th 1055, 1061 (11th Cir. 2022).

treat condition, but the inability to properly diagnose or provide complete relief for a condition does not by itself suggest deliberate indifference.

Dr. Westfall treated Plaintiff the most of the three providers. Even though Dr. Westfall is not a dermatologist and was unable to properly diagnose Plaintiff or prescribe anything that provided relief for his symptoms, Dr. Westfall's treatment cannot be described as more than merely negligent, and certainly not more than grossly negligent. Even accepting as true that Dr. Westfall "conducted cursory examinations," *see* Am. Compl. at 24, the facts alleged do not permit the reasonable inference that Dr. Westfall knew what treatment Plaintiff needed but refused or delayed that treatment for non-medical reasons. *See Adams v. Poag*, 61 F.3d 1537, 1546 (11th Cir. 1995) ("[The law] requires … not merely the knowledge of a condition, but the knowledge of necessary treatment coupled with a refusal to treat properly or a delay in such treatment."). Indeed, Plaintiff himself acknowledges that Dr. Westfall and others were unable to diagnose his condition. *See* Am. Compl. at 23.

Plaintiff alleges Dr. Westfall prescribed multiple different medications, consulted with a dermatologist, and referred him to a dermatologist when the consult did not produce positive results. Even though Dr. Westfall prescribed medications knowing they had proven ineffective in the past, there is nothing to indicate Dr. Westfall knew that trying certain medications again put

13

Plaintiff at a substantial risk of serious harm. *See Monteleone v. Corizon*, 686 F. App'x 655, 660 (11th Cir. 2017) (citing *Estelle*, 429 U.S. at 107) ("[D]etermining which medication to prescribe is generally a matter of medical judgment."). An ineffective medication is not the same as a harmful medication.

Plaintiff treated with Nurse Dawson and Dr. Gupta only twice each. Plaintiff's primary complaint about the care rendered by Nurse Dawson was that, as a nurse merely filling in while Dr. Westfall was on leave, she was "unqualified to exercise professional judgment" and "disregarded Plaintiff's complaints of his suffering" by failing "to submit referrals to advance [his] care to a licensed physician or a specialist." *See* Am. Compl. at 26-27. Accepting that Nurse Dawson was ill-equipped to fill the role of a doctor and could not or would not discontinue or change a medication prescribed by a physician or request an earlier follow-up appointment with a specialist, Plaintiff alleges at most a disagreement with medical judgments or mere negligence. Nurse Dawson cannot be said to have refused to refer Plaintiff to a specialist because the referral had already been made. *See id*. at 20. Assuming she could have, her decision not to request that the appointment occur sooner than the dermatologist recommended is one of medical judgment. That Plaintiff

disagreed with her judgment does not mean she was deliberately indifferent to his serious medical needs.

Plaintiff complains that Dr. Gupta, a surgeon, was unqualified to treat his skin condition, conducted a "cursory examination," failed to refer him to a dermatologist, and prescribed medications knowing they had proven ineffective in the past. *Id.* at 28-29. For the reasons already stated, such allegations do not suggest deliberate indifference. *See supra* pp. 13-14. *See also Adams*, 61 F.3d at 1543 ("Mere negligence in diagnosing or treating a medical condition is an insufficient basis for grounding liability on a claim of medical mistreatment under the Eighth Amendment.").

In sum, Plaintiff's allegations against Defendants Dr. Westfall, Nurse Dawson, and Dr. Gupta do not permit the reasonable inference they were deliberately indifferent to Plaintiff's serious medical needs. It appears Plaintiff believes some or all medical providers were not as persistent as he would have liked but a lack of persistence does not equate to more than gross negligence, especially considering multiple doctors, including a dermatologist, have struggled to find an effective treatment for Plaintiff's apparently mysterious condition. The Court concurs with the Centurion Defendants that Plaintiff's "allegations all speak to [his] [dis]satisfaction with the treatment he received." *See* Centurion Mot. at 11 (citing cases). Accordingly, the Centurion Defendants'

motion is due to be granted to the extent Plaintiff fails to state a plausible deliberate indifference claim against the individual medical providers.

### C. Claims Against Centurion

In six different Counts, Plaintiff asserts Centurion was deliberately indifferent to his serious medical needs in the following ways: "denying him access to a dermatologist"; delaying his follow-up appointment with Dr. Solano by four months; using telehealth services to save costs; and failing to adequately staff the medical departments at both PCI and RMC. *See* Am. Compl. at 23-28. Plaintiff contends each failure was the result of a policy or custom or motivated by a desire to save costs. *See id.* Plaintiff's deliberate indifference claims against Centurion necessarily fail because he does not state a plausible claim against the individual medical providers. "There can be no policy-based liability or supervisory liability when there is no underlying constitutional violation." *Knight through Kerr v. Miami-Dade Cnty.*, 856 F.3d 795, 821 (11th Cir. 2017) (citing *City of L.A. v. Heller*, 475 U.S. 796, 799 (1986)). As such, the deliberate indifference claims against Centurion are due to be dismissed.

### D. Supplemental Jurisdiction

With Plaintiff's constitutional claims due to be dismissed, the only remaining claims arise under state law. The Eleventh Circuit has "encouraged

16

district courts to dismiss any remaining state claims when … the federal claims have been dismissed prior to trial." *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1089 (11th Cir. 2004). *See also* 28 U.S.C. § 1367(c)(3) ("[D]istrict courts may decline to exercise supplemental jurisdiction over [state claims] if . . . the district court has dismissed all claims over which it has original jurisdiction."). The Court declines to exercise supplemental jurisdiction over the pendent state-law claims, which are best resolved by the state court. *See Hardy v. Birmingham Bd. of Educ.*, 954 F.2d 1546, 1553 (11th Cir. 1992) ("State courts, not federal courts, are the final expositors of state law."). As such, the state-law claims will be dismissed without prejudice subject to Plaintiff's right to pursue them in state court if he so chooses.

Accordingly, it is now

**ORDERED**:

1. Defendants Centurion of Florida, LLC, Dr. Westfall, Nurse Dawson, and Dr. Gupta's motion to dismiss (Doc. 25) is **GRANTED in part** to the extent Counts I through IX are **dismissed with prejudice** for Plaintiff's failure to state a plausible claim for relief. Given the Court declines to exercise supplemental jurisdiction over the remaining state-law claims, the remainder of the motion is **DENIED as moot**.

17

2. Defendant Dr. Solano's motion to dismiss (Doc. 26) is **DENIED as moot**.

3. Plaintiff's state-law claims asserted in Counts X through XV are **dismissed without prejudice**.

4. The **Clerk** shall enter judgment accordingly, terminate any pending motions as moot, and close the case.

**DONE AND ORDERED** at Jacksonville, Florida, this 17th day of August 2023.

_____
BRIAN J. DAVIS
United States District Judge

Jax-6
c:  Steven Winch
    Counsel of Record

18